**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILLIP C. LITTLEJOHN,<br><br>Petitioner,<br><br>v.<br><br>STEPHEN REYNOLDS, WARDEN,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-CV-02605-SO<br><br>JUDGE SOLOMON OLIVER, JR.<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Phillip C. Littlejohn ("Mr. Littlejohn"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Littlejohn was sentenced to a term of eight and one-half years in prison after pleading guilty to abduction, attempted felonious assault, violating a protective order, domestic violence, and endangering children.

Mr. Littlejohn asserts two grounds for relief. Respondent, Warden Stephen Reynolds ("Warden"), filed an answer/return of writ on March 16, 2026. (ECF No. 9). Mr. Littlejohn filed a traverse on June 2, 2026. (ECF No. 11-1). The Warden filed a reply to Mr. Littlejohn's traverse on June 17, 2026. (ECF No. 12).

This matter was referred to me on December 15, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Littlejohn's petition. (ECF No. 6). For the reasons set forth below, I recommend that Mr. Littlejohn's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Littlejohn a certificate of appealability.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth Appellate District summarized the facts as follows:

> {¶ 2} This case stemmed from Littlejohn's criminal conduct against the mother of his child over several days in June 2022. Littlejohn and the victim were domestic partners off and on for ten years. The relationship was tumultuous, and Littlejohn had been previously convicted of burglary against the victim, in Cuyahoga C.P. No. CR-20-654071-A. He was on probation for that case and under an existing protection order when the instant incident occurred. For several days between June 12 and June 16, 2022, he held the victim against her will in his residence and assaulted her repeatedly in front of their son.
>
> {¶ 3} Littlejohn was arrested on July 9, 2022, and indicted on July 15, 2022, in Cuyahoga C.P. No. CR-22-672241-A. The State reindicted Littlejohn on February 14, 2023, in Cuyahoga C.P. No. CR-23-678475-A and dismissed the first case. After the reindictment, the trial court held multiple pretrial hearings in this case. Littlejohn expressed his desire to go to trial at these hearings, but eventually pleaded guilty on January 7, 2024. He pleaded to reduced charges of abduction (Count 1) and attempted felonious assault (Count 7), both third-degree felonies. He also pleaded guilty to violating a protection order (Count 11), a third-degree felony; domestic violence (Count 12), a third-degree felony; and endangering children (Count 13), a first-degree misdemeanor, as charged in the indictment. The State dismissed the remaining eight counts. The parties were in agreement that attempted felonious assault (Count 7) and domestic violence (Count 12) would merge for sentencing.
>
> {¶ 4} At the sentencing hearing, the victim provided a lengthy victim-impact statement. She had a relationship with Littlejohn for ten years, and their son was born in 2019. In June 2022, Littlejohn held her captive in his residence for four days and beat her repeatedly in front of their son while she cowered on the floor. She estimated she was slapped, punched, and choked over a hundred times. He also used a beam to beat her. She was denied water and was not allowed to use the bathroom for hours.
>
> {¶ 5} The victim was eventually able to call her mother, who then called the police. When the police officers arrived, Littlejohn denied the victim was in the house and

> refused to let the officers enter it. After 45 minutes, an officer was able to look inside the residence and saw the victim mouthing the words "help me." The scene was captured on the officer's bodycam.
>
> {¶ 6} The victim's teeth were cracked from the beating, and she could not swallow food for over a month. She was unable to work afterwards because her hands were badly injured. Their child was severely traumatized by witnessing his mother being brutally assaulted by his father. His speech development was delayed as a result, and he would punch his teddy bear while laughing.

(ECF No. 9-1, Exhibit 24); *State v. Littlejohn*, No. 113644, 2024 WL 4381111, 2024-Ohio-4797 (8th Dist. Oct. 3, 2024).

## III. PROCEDURAL HISTORY

### A. <u>State Court Guilty Plea</u>

On July 15, 2022, Mr. Littlejohn was indicted in the Cuyahoga County Court of Common Pleas on three counts of kidnapping, three counts of felonious assault, two counts of domestic violence, one count of rape, one count of endangering children, one count of intimidation, one count of tampering with evidence, one count of disrupting public services, and one count of violating a protection order. (ECF No. 9-1, Exhibit 24, ¶ 3 & n.1).

On February 14, 2023, Mr. Littlejohn was re-indicted in the Cuyahoga County Court of Common Pleas on: (1) three first-degree felony counts of kidnapping in violation of O.R.C. § 2905.01(A); (2) three first-degree felony counts of rape in violation of O.R.C. § 2907.02(A)(2); (3) two second-degree felony counts of felonious assault in violation of O.R.C. §2903.11(A); (4) one third-degree felony count of tampering with evidence in violation of O.R.C. § 2921.12(A)(1); (5) one fourth-degree felony count of disrupting public services in violation of O.R.C. § 2904.04(A)(1); (6) one third-degree felony count of violating a protective order in violation of O.R.C. § 2919.27(A)(1); (7) one third-degree felony count of domestic violence in violation of O.R.C. § 2919.25(A); and (8) one first-degree misdemeanor count of endangering children in violation of O.R.C. § 2919.22(A). (ECF No.

9-1, Exhibit 1). The kidnapping, rape, and felonious assault charges also carried various specifications. *Id*. On February 17, 2023, Mr. Littlejohn pled not guilty to all charges. (ECF No. 9-1, Exhibit 2).

Following Mr. Littlejohn's arraignment, the trial court granted multiple continuances of the pretrial conference, several of which were at the request of Mr. Littlejohn's counsel to facilitate discovery or to accommodate scheduling conflicts. (ECF No. 9-1, Exhibits 3-12). On May 18, 2023, Mr. Littlejohn filed a motion asking the court to withdraw his counsel of record. (ECF No. 9-1, Exhibit 13). On the same day, Mr. Littlejohn filed a motion asking the court to grant him a speedy trial in accordance with his rights under the Sixth Amendment to the United States Constitution and O.R.C. § 2945.71. (ECF No. 9-1, Exhibit 14).[1]

Mr. Littlejohn also expressed his desire to go to trial at multiple hearings. At a July 11, 2023 hearing, he stated "I just want to get this over with. I want to go to trial." (ECF No. 9-2, PageID # 343, 29:18-19). On November 13, 2023, Mr. Littlejohn similarly informed the court, "I'm ready to go to trial. I'm definitely ready to go to trial on this matter." *Id*. at PageID # 355, 41:12-18. Later in the same hearing, Mr. Littlejohn said the following: "Constant continuing, continuing, continuing. I'm ready to go to trial, and to my understanding [counsel] is going to get discovery. I think discovery is here. I'm ready to go to trial." *Id*. at PageID # 359, 45:10-14).

On January 17, 2024, Mr. Littlejohn withdrew his plea of not guilty and pled guilty to one third-degree felony count of abduction, one third-degree felony count of attempted felonious assault, one third-degree felony count of violating a protective order, one third-degree felony count of domestic violence, and one first-degree misdemeanor count of

[1] Mr. Littlejohn refiled both motions on May 22, 2023. (ECF No. 9-1, Exhibits 15-16).

endangering children. (ECF No. 9-1. Exhibit 17). The remaining counts were nolled. *Id*. On January 18, 2024, the trial court sentenced Mr. Littlejohn to an aggregate term of eight and one-half years in prison. (ECF No. 9-1, Exhibit 18).

**B. Direct Appeal**

On February 16, 2024, Mr. Littlejohn, acting *pro se*, timely filed a notice of appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 19). On August 2, 2024, Mr. Littlejohn, through new appellate counsel, filed his appellate brief, raising the following assignments of error:

1. The trial court erred to Appellant's prejudice and in violation of the Double Jeopardy Clause when it imposed a prison sanction on an allied offense of similar import, acknowledged by all on the record to have merged.

2. Appellant's statutory and constitutional rights to a speedy trial were violated.

3. The trial court erred to Appellant's prejudice by imposing consecutive prison sentences which are not supported by the record.

(ECF No. 9-1, Exhibit 22).

On October 3, 2024, the Eighth Appellate District affirmed in part and vacated in part. (ECF No. 9-1, Exhibit 24). The court held that the trial court erred in imposing a prison term on the domestic violence count even though that count should have merged into the attempted felonious assault count. The Eighth Appellate District vacated the concurrent sentence on the domestic violence count and remanded the case to the trial court to issue a corrected judgment. The Eighth Appellate District otherwise affirmed Mr. Littlejohn's convictions and sentences. On December 9, 2024, the trial court entered an order vacating the prison term on the domestic violence count. (ECF No. 9-1, Exhibit 28).

On March 12, 2025, Mr. Littlejohn filed a notice of appeal to the Ohio Supreme Court from the Eighth Appellate District's decision, along with a motion for leave to file a delayed

appeal. (ECF No. 9-1, Exhibits 25-26). On May 13, 2025, the Ohio Supreme Court denied Mr. Littlejohn's motion and dismissed the appeal. (ECF No. 9-1, Exhibit 27).

### C. Rule 26(B) Application to Reopen Appeal

On December 13, 2024, Mr. Littlejohn, acting *pro se*, filed an application in the Eighth Appellate District to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B)(1), arguing that he received the ineffective assistance of appellate counsel during his direct appeal. (ECF No. 9-1, Exhibit 32). In particular, Mr. Littlejohn argued that his appellate counsel was ineffective in failing to argue that: (1) certain convictions were allied offenses of similar import and should have merged at sentencing; and (2) the conviction for attempted felonious assault was invalid because Ohio does not recognize that offense. *Id.*

On March 19, 2025, the Eighth Appellate District denied Mr. Littlejohn's application, holding that he failed to demonstrate that he was prejudiced by any alleged ineffective assistance. (ECF No. 9-1, Exhibit 36). Mr. Littlejohn filed a timely appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 38). In his memorandum in support of jurisdiction, Mr. Littlejohn raised the following propositions of law:

1. The Eighth District Court of Appeals erred in denying Appellant's Application for Reopening, filed pursuant to App.R. 26(B), on grounds that Appellant failed to demonstrate that appellate counsel's performance was deficient and that he was prejudiced.

2. The Eighth District's finding that Appellant failed to "establish any prejudice that resulted from the conduct of appellate counsel on appeal, is contrary to App.R. 26(B)(5), where it denied Appellant's Application for Reopening without first determining whether Appellant demonstrated a genuine issue of ineffective assistance of appellate counsel.

3. The Eighth District erred by finding that Appellant's plea to attempted felonious assault, an offense that is not cognizable in the State of Ohio, was invited error.

(ECF No. 9-1, Exhibit 39). On June 24, 2025, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 9-1, Exhibit 41).

### D. Motion to Withdraw Guilty Plea

On July 16, 2025, Mr. Littlejohn, acting *pro se*, filed a motion in the trial court to withdraw his guilty plea pursuant to Ohio Rule of Criminal Procedure 32.1. (ECF No. 9-1, Exhibit 29). In the motion, Mr. Littlejohn argued that he should be permitted to withdraw his plea because the trial court permitted him to plead guilty to a charge of attempted felonious assault, an offense that does not exist under Ohio law. *Id*. On July 23, 2025, the trial court denied Mr. Littlejohn's motion. (ECF No. 9-1, Exhibit 30). Mr. Littlejohn did not appeal the trial court's ruling.

### E. Federal Habeas Action

On November 19, 2025, Mr. Littlejohn, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Littlejohn's habeas petition raises the following grounds for relief:

1. The state court's adjudication of petitioner's claim that his constitutional right to a speedy trial was violated resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

2. Where counsel on appeal failed to raise meritorious issues for review, resulting in prejudice to the petitioner, the state court adjudication finding was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id*. The Warden filed an answer/return of writ on March 16, 2026. (ECF No. 9). On June 2, 2026, Mr. Littlejohn filed a motion for leave to file his traverse *instanter*, which I granted on the same day. (ECF No. 11; ECF non-document entry dated June 2, 2026). The

Warden filed a reply to Mr. Littlejohn's traverse on June 17, 2026. (ECF No. 12).[2]

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Littlejohn, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Littlejohn's § 2254 petition.

### B. Exhaustion and Procedural Default

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full

[2] On June 30, 2026, Mr. Littlejohn filed a response to the Warden's sur-reply. (ECF No. 13). The scheduling order in this case (ECF No. 5) did not authorize Mr. Littlejohn to file an additional response, and he did not seek leave of court before filing it. While the Warden has not moved to strike Mr. Littlejohn's response, I will decline to consider it.

and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for

his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C. Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does

not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by

clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. Sixth Amendment Right to a Speedy Trial

In his first ground for relief, Mr. Littlejohn asserts that the State violated his Sixth Amendment right to a speedy trial. The Warden responds that Mr. Littlejohn procedurally defaulted on his claim, that he waived the claim through an unconditional guilty plea, and that the claim fails on the merits. The Warden's arguments are well-taken.

#### *1. Procedural Default*

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)) (cleaned up). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id.* at

751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

Mr. Littlejohn presented his speedy trial claim in his direct appeal to the Eighth Appellate District. (ECF No. 9-1, Exhibit 22). But after the Eighth Appellate District affirmed on October 3, 2024, he failed to file a timely appeal to the Ohio Supreme Court. Instead, Mr. Littlejohn filed a motion for leave to file a delayed appeal on March 12, 2025, well after his original appeal deadline expired. *See* ECF No. 9-1, Exhibit 26; Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i) (providing that an appellant must file a notice of appeal to the Ohio Supreme Court within 45 days of the entry of judgment being appealed).

The Ohio Supreme Court denied Mr. Littlejohn's motion on May 13, 2025. (ECF No. 9-1, Exhibit 27). It is well-settled that an Ohio court's denial of a motion for leave to take a delayed appeal constitutes an independent and adequate state ground that precludes habeas review under *Maupin*. *See Prieto v. Schweitzer*, 4:18CV00222, 2019 WL 2605639, at *6 (N.D. Ohio May 31, 2019), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021) ("The Court finds Prieto's failure to timely appeal to the Supreme Court of Ohio, in conjunction with that court's denial of his Motion for Delayed Appeal, resulted in procedural default.") (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)); *Davenport v. Fender*, No. 1:20-CV-0561, 2023 WL 1785492, at *13 (N.D. Ohio Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023) (holding that Ohio Supreme Court's denial of motion for leave to file delayed appeal constituted adequate and independent state ground under *Maupin* and resulted in procedural default). The fact that the Ohio Supreme Court issued its rulings without explaining its reasoning does not change that result. *See Mitchell v. Kelly*, No. 1:11 CV 2744, 2012 WL 274701, at *3 (N.D. Ohio Jan. 31, 2012) (holding that state court implicitly enforced procedural bar when it summarily

denied petitioner's motion for leave to file a delayed appeal). Mr. Littlejohn has therefore procedurally defaulted on his first ground for relief.

Mr. Littlejohn's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. He argues that cause exists because the Ohio Department of Rehabilitation and Correction ("ODRC") transferred him between facilities and prevented him from timely filing an appeal to the Ohio Supreme Court. Specifically, he asserts that the ORDC inadvertently transferred him from Lake Erie Correctional Institution to North Central Correctional Institution ("NCCI") before the Eighth Appellate District's decision came down. While he was at NCCI, his appellate counsel informed him of the Eighth Appellate District's decision and the deadline to appeal to the Ohio Supreme Court. However, he says that, while he was preparing the appeal, prison officials notified him of the inadvertent transfer and informed him that he would be transferred back to Lake Erie Correctional Institution the same day. He also says that prison officials did not permit him to pick up his personal property and that he did not receive it until December 2024, after the appeal deadline had expired. Mr. Littlejohn made the same assertions, along with a supporting affidavit, in his motion for leave to file a delayed appeal to the Ohio Supreme Court. (ECF No. 9-1, Exhibit 26). However, Mr. Littlejohn did not provide any additional documents substantiating his claims or showing that the transfer prevented him from filing a timely appeal.

"District courts have rejected similar unsubstantiated claims that a prison transfer constituted cause to excuse a procedural default." *Walker v. Schweitzer*, No. 5:17cv2361, 2020 WL 981431, at *9 (N.D. Ohio Feb. 7, 2007) (citing cases), *report and recommendation adopted sub nom.*, 2020 WL 977965 (N.D. Ohio Feb. 28, 2020); *see also Echols v. Sloan*,

No. 1:17 CV 859, 2018 WL 10125149, at *7 (N.D. Ohio Oct. 22, 2018), *report and recommendation adopted*, 2019 WL 6699452 (N.D. Ohio Dec. 9, 2019) (same). I agree with those decisions and conclude that the prison transfer does not constitute cause to excuse Mr. Littlejohn's procedural default. Nor has he offered any other basis on which the default could be excused. Accordingly, I recommend that the Court dismiss Mr. Littlejohn's first ground for relief as procedurally defaulted.

***2. Waiver Through Guilty Plea***

The Warden next argues that the Court should dismiss Mr. Littlejohn's speedy trial claim because his unconditional state court guilty plea precludes him from raising it in a federal habeas petition. I agree.

"Generally, a voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on the conviction." *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted). This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[A]fter the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

Mr. Littlejohn acknowledges that his guilty plea would generally prevent him from raising claims based on alleged pre-plea deprivations of his rights. He argues, however, that his speedy trial claim is not barred under the Supreme Court's decision in *Lefkowitz v. Newsome*, 420 U.S. 283 (1975), because Ohio law permits a defendant to assert a speedy trial claim on appeal even after pleading guilty.

In *Lefkowitz*, the defendant was charged with loitering and drug possession but filed a motion to suppress, arguing that the arresting officer did not have probable cause for the loitering arrest and that the search was invalid. *Id*. at 284. After the trial court denied his motion, the defendant pled guilty to attempted possession but indicated his intention to appeal the denial of the motion to suppress. *Id*. at 284-85. At the time, New York law provided that an appellate court could review an order denying a motion to suppress even if the defendant pled guilty. *Id*. (citing N.Y.Crim.Proc.Law ss 710.20(1), 710.70(2), McKinney's Consol.Laws c. 11—A). After the state courts affirmed, the defendant filed a habeas petition in federal court. *Id*. at 285-86. The lower courts granted relief on the basis that New York's loitering statute was invalid, and the New York Attorney General appealed to the Supreme Court, arguing, among other things, that the defendant waived his right to seek habeas relief by pleading guilty. *Id*. at 287.

The Court held that the defendant's guilty plea did not bar his claim. The Court recognized an exception to *Tollett* "when a State decides to permit a defendant to appeal from an adverse ruling in a pretrial hearing despite the fact that his conviction is based on a guilty plea." *Id*. at 288. Where the state permits an appeal, "there is no 'break' at all in the usual state procedure for adjudicating constitutional issues." *Id*. at 289. Instead, "[t]he guilty plea operates simply as a procedure by which the constitutional issues can be litigated without the necessity of going through the time and effort of conducting a trial, the result of which is foreordained if the constitutional claim is invalid." *Id*. at 289-90. Thus, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Id*. at 293.

Mr. Littlejohn argues that his claim is not barred under *Lefkowitz*. Unlike the New York statute at issue in *Lefkowitz*, however, Ohio does not have a law that permits a defendant to raise a speedy trial claim after pleading guilty. Instead, the Eighth Appellate District has held in several decisions that a guilty plea does not waive a constitutional speedy trial claim under Ohio law. *See State v. Kutkut*, No. 98479, 2013 WL 1461989, at *2, 2013-Ohio-1442 (Ohio Ct. App. Apr. 11, 2013); *State v. King*, 920 N.E.2d 399, 404, 184 Ohio App. 3d 226 (2009). Mr. Littlejohn argues that those decisions are sufficient to satisfy *Lefkowitz*, especially because the Eighth Appellate District actually considered his constitutional claim on the merits notwithstanding his guilty plea.

The law in the Sixth Circuit regarding whether state court decisions can trigger *Lefkowitz* is not entirely settled. In *Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978), the court held that *Lefkowitz* applied where Kentucky courts, including the Kentucky Supreme Court, had consistently permitted appeals to challenge juvenile transfer proceedings after a guilty plea. *Id*. at 889-90. In *Werth*, however, the Sixth Circuit stated that it was "not clear" whether an unpublished state court appellate decision qualified as "state law" under *Lefkowitz* because "[t]he Supreme Court did not specify whether 'state law' included common law and, if so, which state decisions it meant to include." 692 F.3d at 497-98. The court further noted that, while *Canary* held that a state supreme court decision could qualify, the Sixth Circuit had never reached the same holding with respect to intermediate appellate opinions. *Id*. at 498.

Even assuming that settled case law can constitute "state law" for purposes of *Lefkowitz*, the law in Ohio is far from settled. The Ohio Supreme Court has never ruled on the question of whether a guilty plea waives a speedy trial claim, and other intermediate appellate districts have disagreed with the Eighth Appellate District. *See State v. West*, 730

N.E.2d 388, 393-94, 134 Ohio App. 3d 45 (1999); *State v. Johnson*, No. 2013-CA-1, 2013 WL 5314587, at *1, 2013-Ohio-4077 (Ohio Ct. App. Sept. 20, 2013) (discussing split of authority among Ohio appellate courts).

One other court in this district has directly considered this issue. In *Johnson v. Eppinger*, No. 1:16CV2189, 2018 WL 4870761 (N.D. Ohio Oct. 9, 2018), the petitioner argued that his guilty plea did not bar his speedy trial claim because Ohio courts permitted a defendant to raise the claim on appeal even after pleading guilty. *Id*. at *4. The court rejected that argument. It concluded that, "at most, Ohio courts are split as to whether a constitutional speedy-trial claim is waived by a guilty plea," and that the Eighth Appellate District appeared to be the only district in Ohio that permitted appeals in those circumstances. *Id*. Because Ohio did not "have an affirmative policy, either by statute or consistent or widespread judicial practice" to allow defendants to appeal speedy trial claims even after a guilty plea, the court held that *Lefkowitz* was inapplicable. *Id*.

*Johnson* is well-reasoned and persuasive. I conclude that the Eighth Appellate District's decisions on which Mr. Littlejohn relies, while supportive of his position, do not establish that Ohio law permits a defendant to raise a speedy trial claim on appeal even after pleading guilty. *Lefkowitz* does not apply, and *Tollett* bars Mr. Littlejohn's speedy trial claim.

***3. Merits***

Finally, and in the alternative, I recommend that the Court deny Mr. Littlejohn's speedy trial claim on the merits because he has not shown that the Eighth Appellate District's adjudication was contrary to, or an unreasonable application of, clearly established law.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). "The purpose of the speedy-

trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017).

In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right. *Id.* at 523. Instead, the Court crafted a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred. *Id.* at 530. The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.*; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992). "[N]one of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. Moreover, "even if all four *Barker* factors are satisfied, a court is not required to conclude that a defendant's speedy trial right has been violated." *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019) (citing *Barker*, 407 U.S. at 533).

Mr. Littlejohn argues that the State violated his right to a speedy trial because he was first arrested on July 9, 2022 and did not plead guilty until January 17, 2024, 556 days later. Mr. Littlejohn also argues that he attempted to assert his speedy trial right on multiple occasions during this period. He further argues that he suffered prejudice because he faced oppressive incarceration and experienced anxiety while he was awaiting trial, including because his mother was suffering from cancer and because he lacked access to some of his mental health medications. The Eighth Appellate District addressed Mr. Littlejohn's speedy

trial claim on the merits, rejecting it as follows:

> {¶ 13} When considering whether a defendant's constitutional right to a speedy trial is violated, the statutory time requirements of R.C. 2945.71 to 2945.73 are not relevant; rather, we are to balance the factors enumerated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Kutkut* at ¶ 10. These factors are "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant." *Id.*, citing *Barker* at 530-533, 92 S.Ct. 2182. No single factor controls; rather, these factors are to be considered together with relevant circumstances. *Id.*, citing *Barker* at 533, 92 S.Ct. 2182. "Review of a speedy-trial claim involves a mixed question of law and fact." *State v. Long*, 2020-Ohio-5363, ¶ 15, 163 Ohio St.3d 179, 168 N.E.3d 1163.
>
> {¶ 14} In this case, Littlejohn was arrested on July 9, 2022, and arraigned on July 20, 2022. The docket reflects nine continuances at the request of the defense from his arraignment to February 1, 2023. On February 1, 2023, the case was continued to allow the State to reindict Littlejohn. On February 14, 2023, the State reindicted him. Thereafter, as the docket shows, several more continuances were charged to the defense. On May 18 and May 22, 2023, Littlejohn filed duplicate pro se motions invoking his statutory and constitutional speedy-trial right but did not set forth any argument in support. Thereafter, the trial court held several hearings, the transcript of which are contained in the record.
>
> {¶ 15} At a hearing held on May 30, 2023, the trial court noted that Littlejohn had been transferred to its mental health docket and that he was currently incarcerated on a probation violation in Cuyahoga C.P. No. CR-20-654071 — a case involving a fourth-degree felony burglary committed against the same victim. The trial court denied Littlejohn's motion for a speedy trial based on its review of the docket. The court noted the trial was set for June 26, 2023, and explained to Littlejohn the differences between a jury trial and a bench trial as well as the potential impact of his criminal history in a jury trial. On June 26, 2023, the trial was continued to July 31, 2023, due to plea negotiations.
>
> {¶ 16} On July 11, 2023, the trial court held another hearing, which was necessitated by the victim's report that Littlejohn repeatedly contacted her by jail calls and letters asking her not to appear for trial — despite the existence of a protection order. Because of Littlejohn's conduct, the State filed a motion to revoke all non-attorney phone, mail, and visitation privileges. The trial court granted the State's motion. At this hearing, Littlejohn expressed his desire to have a trial.
>
> {¶ 17} A docket entry on July 11, 2023, indicates that the July 31, 2023 trial date was rescheduled to September 18, 2023, for further discovery and plea negotiations. On September 18, 2023, the trial court held another pretrial hearing; the trial was continued to November 13, 2023, due to trial court's unavailability.

{¶ 18} On October 6, 2023, Littlejohn filed a motion for bond reduction and to modify bail. On October 23, 2023, the trial court held a hearing on the motion. It denied the motion on the ground that Littlejohn was being held for a probation violation and awaiting trial for a case involving a first-degree felony. Littlejohn again expressed his desire to go to trial.

{¶ 19} On November 13, 2023, the trial court held another hearing. The court acknowledged that Littlejohn has been held in jail for over 400 days. The parties reported on the progress of the plea negotiations, the terms of the State's proposed plea agreement, and Littlejohn's wish of pleading guilty only to a third-degree felony of domestic violence. The defense reported that Littlejohn was wavering between a bench trial and a jury trial and that he had expressed a desire to represent himself pro se. Littlejohn again stated he was ready to go to trial and would opt for a jury trial. He also inquired again about his speedy-trial right. The trial court explained that he was being incarcerated for a probation violation in a different case and therefore the State would have 270 days to bring him to trial, which could be increased by various tolling events. The court noted that the State was within the time limit due to the preparation of mental health reports ordered in this case and the continuances for discovery requests and plea negotiations. After a recess, the court indicated that Littlejohn asked for new counsel. Littlejohn complained that his counsel did not discuss defense strategy with him and had not talked to his mother, who would be his alibi witness. The trial court explained the challenges his counsel potentially faced in planning a trial strategy, including his prior criminal history, probation violation in a case concerning the same victim, and harassing conduct toward the victim despite a protection order. The court denied his request for new counsel. The trial was rescheduled for January 17, 2024. On January 17, 2024, Littlejohn pleaded guilty to reduced charges.

{¶ 20} Because Littlejohn waived the statutory speedy-trial right in pleading guilty, we will weigh the *Barker* factors instead of calculating the number of days chargeable to either party based upon any applicable tolling events.

{¶ 21} In a *Barker* analysis, the first factor concerns the length of the delay, and it is a triggering mechanism determining the necessity of inquiry into the other factors. *State v. Robinson*, 2017-Ohio-6895, ¶ 9 (8th Dist.), citing *State v. Triplett*, 78 Ohio St.3d 566, 679 N.E.2d 290 (1997), citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. A defendant claiming a violation of a constitutional speedy-trial right must meet the "threshold requirement" of a "presumptively prejudicial" delay to trigger a *Barker* analysis. *State v. Duncan*, 2012-Ohio-3683, ¶ 8 (8th Dist.). Generally, a delay that approaches one year is presumptively prejudicial. *Long*, 2020-Ohio-5363, ¶ 14, 163 Ohio St.3d 179, 168 N.E.3d 1163, citing *Doggett v. United States*, 505 U.S. 647, 652, fn. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶ 22} The State conceded that Littlejohn pleaded guilty 556 days after his arrest on July 9, 2022, and he was held 281 more days even after he filed a pro se motion for a speedy trial in May 2023. Thus, the threshold requirement of a presumptively prejudicial delay is met here.

{¶ 23} The second *Barker* factor is the reason for the delay. Littlejohn acknowledges in his brief that, while the length of the delay weighs in his favor, the second factor is "more of a mixed bag." Indeed, our review of the record, as recounted above, reflects that much of the delay can be attributed to Littlejohn. *Long* at ¶ 17 (In a *Barker* analysis, the court should consider whether some of the delay is attributable to the defendant.).

{¶ 24} Littlejohn filed a motion to substitute counsel on December 14, 2022, and a "Motion to Withdraw Counsel" on May 18, 2023. His counsel filed a "Motion to Eliminate Counsel Only Designation" on May 22, 2023, and a motion for bond reduction on October 6, 2023. In addition, because of his harassing conduct toward the victim, the State was compelled to file a motion on July 11, 2023, requesting the revocation of his phone, visitation, and mail privileges. Moreover, as the transcript indicates, Littlejohn had at one point decided on a bench trial and then changed his mind and opted for a jury trial at the November 13, 2023 hearing. Moreover, the docket entries show that most of the continuances — both before and after Littlejohn filed a motion for speedy trial — were recorded as being "at the request of defendant" due to discovery or plea negotiations. While "[d]eliberate attempts to hamper the defense weigh heavily against the government," *Long*, 2020-Ohio-5363, at ¶ 56, 163 Ohio St.3d 179, 168 N.E.3d 1163, our review of the record reveals no evidence that the State deliberately delayed the proceedings to prejudice the defense or induce a plea. *Forrest*, 2021-Ohio-122, at ¶ 17 (8th Dist.). Based on the record before us, the second *Barker* factor weighs against Littlejohn.

{¶ 25} The third factor concerns a defendant's assertion of the speedy-trial right. While Littlejohn asserted his speedy-trial right in a motion and raised the issue at several hearings, no properly argued brief was ever filed on his behalf even though he was represented by competent counsel. Even if we weigh this factor in favor of Littlejohn, he has not demonstrated prejudice, the final factor of the *Barker* analysis.

{¶ 26} "The prejudice factor in the analysis 'should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.' " *Long* at ¶ 22, quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. These interests are " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " *Id*., quoting *Barker* at 532, 92 S.Ct. 2182. "The third interest warrants special emphasis because prejudice in that context 'skews the fairness of the entire system.' " *Id*., quoting *Barker* at 532, 92 S.Ct. 2182. *See also Forrest* at ¶ 23 (the impact of the delay on the ability of the defendant to prepare his defense is the greatest concern in a prejudice analysis).

{¶ 27} Regarding prejudice, Littlejohn vaguely asserts that the delay put extreme pressure on him because he was forced to carry on his daily life from a jail cell and he was not able to plan for his future due to the uncertainty. He claims, without pointing to anything in the record to substantiate the claim, that he was put in "purgatory" until he agreed to plead guilty. We are aware that "oppressive pretrial incarceration" and "anxiety and concerns of the accused" must be taken into account

> in a prejudice analysis because of the detrimental impact on an individual from the time spent in jail awaiting trial. *Long*, 2020-Ohio-5363, at ¶ 26, 163 Ohio St.3d 179, 168 N.E.3d 1163. However, in this case, Littlejohn was incarcerated due to his probation violation in a separate case and our reading of the transcript does not indicate his incarceration in that case was a deliberate attempt by the court or the prosecutor to induce him to plead guilty. Furthermore, Littlejohn does not specify how his ability to prepare for his defense was hindered by the pretrial incarceration or the delay in trial. As such, we are unable to find the prejudice factor weighs in his favor.
>
> {¶ 28} Balancing the *Barker* factors, we find no violation of Littlejohn's constitutional speedy-trial right. The second assignment of error is without merit.
>
> (ECF No. 9-1, Exhibit 24).

Applying AEDPA deference, the Eighth Appellate District's adjudication was not contrary to or an unreasonable application of clearly established law. With respect to the first *Barker* factor, "[t]he Supreme Court [has] noted that, in general, a delay that approaches one year is considered presumptively prejudicial, depending on the nature and seriousness of the charges." *Norris v. Schotten*, 146 F.3d 314, 327 (6th Cir. 1998) (citing *Doggett*, 505 U.S. at 652 n.1). The Warden concedes that the Eighth Appellate District correctly determined that the delay was presumptively prejudicial because Mr. Littlejohn did not plead guilty until well over a year after he was first arrested.

"The second *Barker* factor looks at 'whether the government or the criminal defendant is more to blame for th[e] delay.'" *Miles v. Jordan*, 988 F.3d 916, 925 (6th Cir. 2021) (quoting *Barker*, 407 U.S. at 651). "The Supreme Court has explained that different reasons for delay should be given different weights with deliberate delays weighed more heavily and valid delays less heavily." *Brown v. Bobby*, 656 F.3d 325, 333 (6th Cir. 2011) (citing *Barker*, 407 U.S. at 531). "The underlying purpose of analyzing the reasons for the delay is determining which party is more to blame for the delay." *Id.*

Mr. Littlejohn argues that the Eighth Appellate District erred when it held that many of the continuances and delays in bringing him to trial were chargeable to him. He notes that

he stated on multiple occasions that he was ready to go to trial. He also argues that his counsel sought ten separate continuances, many of which were for discovery reasons, and that those continuances should not be charged to him because he did not want them and instead wished to proceed to trial. As the Warden correctly responds, however, the Supreme Court has held that "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) (quoting *Coleman*, 501 U.S. at 722).

Mr. Littlejohn notes that the general rule that delays caused by the attorney are charged to the defendant is not absolute and may not apply where the delay results from a systematic breakdown in the public defender system. *Id*. at 94. But Mr. Littlejohn has not shown that any systematic breakdown occurred here. The Eighth Appellate District did not misapply clearly established law in holding that the second *Barker* factor weighed against Mr. Littlejohn.

The third *Barker* factor "relates to 'the defendant's responsibility to assert his right,' and its effect will depend on the other factors." *Miles*, 988 F.3d at 925 (quoting *Barker*, 407 U.S. at 531). "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 925. Here, the Eighth Appellate District conceded that Mr. Littlejohn filed a motion asserting his speedy trial right and raised the issue at several hearings, but noted that his counsel never filed a "properly argued" brief on his behalf. (ECF No. 9-1, Exhibit 24). However, it also held that even weighing the third

factor in favor of Mr. Littlejohn would not change the outcome because he had not demonstrated prejudice. Accordingly, I will consider the third and fourth factors together.

With respect to prejudice, the final factor, "[a] defendant must show that 'substantial prejudice' has resulted from the delay." *Rice*, 786 F. App'x at 37 (quoting *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003)). The Supreme Court has identified three interests a court should consider when determining actual prejudice: (1) preventing "oppressive pretrial incarceration"; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

The Eighth Appellate District acknowledged that oppressive pretrial incarceration and Mr. Littlejohn's anxiety were legitimate interests that it must take into account. However, the court also noted that Mr. Littlejohn was incarcerated on a probation violation in another case, a fact that Mr. Littlejohn does not dispute. The court further held that Mr. Littlejohn had not shown how the delay impeded his ability to prepare a defense. Accordingly, the court held that the prejudice factor weighed against Mr. Littlejohn.

Applying AEDPA deference, the Eighth Appellate District did not err in applying the third and fourth *Barker* factors. The court acknowledged that the oppression and anxiety Mr. Littlejohn faced were important factors and that he asserted his speedy trial right on multiple occasions. However, the court also reasonably concluded that Mr. Littlejohn could not show sufficient prejudice because he was incarcerated on another violation and had not demonstrated that the delay impeded his defense. While another court perhaps could have weighed the *Barker* factors differently, Mr. Littlejohn has not shown that the Eighth Appellate

District's holding was contrary to or an unreasonable application of clearly established law. I alternatively recommend that the Court deny Mr. Littlejohn's first ground for relief on the merits.

## B. Ineffective Assistance of Appellate Counsel

In his second ground for relief, Mr. Littlejohn asserts that he received the ineffective assistance of appellate counsel in violation of his Sixth Amendment rights. The Warden argues that Mr. Littlejohn's claim is barred by his guilty plea and is without merit.[3]

### *1. Waiver Through Guilty Plea*

The Warden first argues that, by entering an unconditional guilty plea, Mr. Littlejohn waived his ineffective assistance of counsel claim. *Tollett*, 411 U.S. at 267. It is true that a valid and unconditional guilty plea waives claims of pre-plea ineffective assistance of counsel that do not relate to whether the plea itself was knowing and voluntary. *See Flores v. Turner*, No. 3:19-CV-02608, 2023 WL 4746323, at *11 (N.D. Ohio Jan. 13, 2023), *report and recommendation adopted*, 2023 WL 4744277 (N.D. Ohio July 25, 2023); *Brown v. McConahay*, No. 1:23-cv-753, 2023 WL 9556586, at *12 (N.D. Ohio Dec. 18, 2023), *report and recommendation adopted*, 2024 WL 177116 (N.D. Ohio Jan. 17, 2024). However, Mr. Littlejohn is not asserting an ineffective assistance of trial counsel claim based on alleged pre-plea conduct. Instead, he argues that his appellate counsel was ineffective *after* entry of the plea by failing to raise certain arguments on appeal. The Warden does not cite any cases for the proposition that *Tollett* bars an ineffective assistance of appellate counsel claim based on the failure to raise alleged pre-plea trial court errors. Accordingly, I conclude that the proper

[3] The Warden does not argue that Mr. Littlejohn procedurally defaulted on his ineffective assistance of appellate counsel claim. Mr. Littlejohn raised the claim in his Rule 26(B) application to reopen his appeal. (ECF No. 9-1, Exhibit 32). After the Eighth Appellate District denied the application, he timely appealed to the Ohio Supreme Court, which refused to accept jurisdiction over the appeal. (ECF No. 9-1, Exhibits 38-39). Mr. Littlejohn properly exhausted his second ground for relief and has not procedurally defaulted on it.

course is to consider the merits of Mr. Littlejohn's arguments rather than relying on any alleged *Tollett* bar.

### *2. Merits*

The Sixth Amendment guarantees a defendant the right "to have the assistance of counsel for his defense." U.S. CONST. amend. VI. A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985).

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

It is also well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348

(6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Importantly, where a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.
>
> *Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

Mr. Littlejohn argues that his appellate counsel was ineffective in failing to raise two arguments: (1) he was convicted of multiple allied offenses of similar import that should have merged at sentencing; and (2) he pled guilty to attempted felonious assault, a crime that does not exist under Ohio law. The Eighth Appellate District addressed Mr. Littlejohn's ineffective

assistance of appellate counsel claim on the merits when it denied his Rule 26(B) application to reopen his direct appeal:

> {¶ 8} Finally, following a review of Littlejohn's two proposed assignments of error, we find that he has failed to establish any prejudice that resulted from the conduct of appellate counsel on appeal. Littlejohn's first proposed assignment of error is as follows:
>
> > Applicant is denied the effective assistance of appellate counsel and is prejudiced by having more convictions than are authorized by law where multiple charges are allied offenses of similar import and should have merged for sentencing.
>
> {¶ 9} Littlejohn, through his initial proposed assignment of error, argues that the offenses of abduction, attempted felonious assault, and violation of a protection order are allied offenses of similar import that required merger for sentencing. The Ohio Supreme Court in *State v. Ruff*, 2015-Ohio-995, with regard to allied offenses and merger, established that an allied-offenses analysis requires more than just consideration of a defendant's conduct. An allied-offenses analysis requires this court to also consider whether (1) the offenses are of dissimilar import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. In addition, two or more offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.
>
> {¶ 10} Applying the *Ruff* analysis to the convictions for abduction, attempted felonious assault, and violation of a protection order, we find that the aforesaid offenses are not allied that required merger. The offenses of abduction and attempted felonious assault involved the animus of "knowingly" while the offense of violation of a protection order involved the animus of "reckless." We also find that the offenses of abduction and attempted felonious assault were committed as separate acts and caused different harms. The offense of abduction involved the restraining of the victim's liberty and the inability to leave her residence while attempted felonious assault caused physical harm to the victim as the result of Littlejohn's breaking her teeth, choking her, and beating her. Appellate counsel was not ineffective for failing to argue the issue of allied offenses and merger on appeal.
>
> {¶ 11} Littlejohn's second proposed assignment of error is that
>
> > [a]ppellate counsel was ineffective in their assistance when they fail to raise that attempted felonious assault is not a cognizable charge in the State of Ohio.
>
> {¶ 12} Littlejohn, through his second proposed assignment of error, argues that he plead guilty to an offense, attempted felonious assault, that does not exist in Title 29 of the Ohio Revised Code. This court has held that a plea of guilty to a nonexistent

> criminal offense, as part of a negotiated plea of guilty, creates an invited error that is not addressable on appeal, if the guilty plea was knowingly, intelligently, and voluntarily made. *See State v. Wooden*, 2022-Ohio-814 (8th Dist.); *State v. Brawley*, 2002-Ohio-3115 (8th Dist.) (defendant's claim that it was "legally impossible" to be charged with offense to which he pled guilty did not warrant withdrawal of his negotiated guilty plea because any error was invited error); *State v. Lester*, 2018-Ohio-4893 (8th Dist.) (although attempted involuntary manslaughter is a nonexistent crime in Ohio, defendant could not seek to set aside his conviction based on a claim that counsel was ineffective by allowing him to plead guilty to the nonexistent offense where defendant negotiated his plea to it with the State).
>
> {¶ 13} Littlejohn entered a voluntary, knowing, and intelligent plea of guilty to the offense of attempted felonious assault. The plea of guilty to the offense of attempted felonious assault was negotiated, and Littlejohn received the benefit of the nolle of the serious offenses of two counts of kidnapping, three counts of rape, one count of felonious assault, one count of tampering with evidence, and one count of domestic violence Thus, we find that appellate counsel was not ineffective on appeal by failing to raise the issue of pleading guilty to the nonexistent offense of attempted felonious assault. *State v. Thorp*, 2023-Ohio-3629 (8th Dist.); *State v. Robinson*, 2020-Ohio-98 (8th Dist.).
>
> (ECF No. 9-1, Exhibit 36).

Applying the double layer of deference under AEDPA, the Eighth Appellate District's holding was not contrary to or an unreasonable application of clearly established law. I must defer to the Eighth Appellate District's holding that Mr. Littlejohn's convictions for abduction, attempted felonious assault, and violation of a protective order were not allied offenses of similar import under Ohio law. *Estelle*, 502 U.S. at 67-68 (1991). Similarly, I must defer to the Eighth Appellate District's holding that a defendant invites error when he pleads guilty to a nonexistent offense and that such a claim is not cognizable on appeal. *Id.*

Because Mr. Littlejohn's proposed assignments of error are without merit, he has not shown a reasonable probably that the outcome of his appeal would have been different but for his counsel's alleged ineffectiveness. *See Strickland*, 466 U.S. at 694; *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial"). And, because Mr. Littlejohn has not demonstrated prejudice,

I need not analyze whether his counsel was ineffective. *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one"). I therefore recommend that the Court deny Mr. Littlejohn's second ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a),

28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Littlejohn has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Littlejohn's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: November 12, 2026

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which

> shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.
>
> *Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).